The next case on the calendar is number 21-3152, Valdes-Ocasio v. Kijakazi. Mr. Gordon, whenever you're ready. Thank you, your honors. May it please the court. This is a case of a young lady who has psychiatric conditions of schizophrenia, anxiety, panic attacks and depression, who was previously on disability from Social Security and then reapplied. The argument before the court is not that those conditions don't allow her to do things. She can. She cares for children. She's out. The problem is that when she's seeing, when she's hearing things, when she has panic attacks, when she is horribly depressed, then she can't work. And in order to determine whether or not those conditions would allow for a, what in Social Security is called a significant number of jobs, a vocational expert was called upon. And the vocational expert said, with the exact residual functional capacity, which we call an RFC, that the judge gave to them of what they could do and couldn't do, simple work, unskilled entry level type of work, occasional contact. Even if they could do that, no jobs would remain if they could not work consistently. That is, if out of 30 days in a month, they were absent a day and a half, which is about 5%. Or if during the day, if she had a panic attack, if she heard things, if she got distracted, if she was depressed, then- This is an odd case, because we don't have a treating physician saying something. It's an odd case, because she was on disability, and the disability then was ended, and we have no idea why. The only issue in this case seems to be about whether there is enough evidence as to whether she could be off duty for more than three days and unable to function for more than 85% and whether the evidence is sufficient for that. Is that, am I right? It is, and in reviewing that, let me just say, it's one and a half days a month. Sorry, go ahead. Second? I was going to ask a question, but I didn't want to interrupt, so I'm not sure I thought- I'm sorry. And in determining that, the judge actually, TR 101 of the transcript does reference at least a prior treating. The problem is, she's treating with UHS outpatient, refuses to let their providers- Well, why would it matter if it's a treating physician? So the treating physician rule has been repealed, and it does not apply to this case, right? Right, and in any event, under any circumstances, here is what was before the judge. No, I mean, if it were a treating physician that said something about her inability, your case would be much stronger. It isn't determinative anymore, but it would be much stronger. Right. What I'm saying is, all about this case is that you don't have what in most of these cases would make your case stronger. That is the only difference between we set forth Rucker in our frat. That is the only difference, but it doesn't matter because the judge still has to make a determination based on something, and on those critical- Well, the judge didn't disagree. So the vocational expert is asked whether if she's prevented from working 15 to 18% of the time outside of normal work breaks, whether she'd be able to work, and the vocational expert says, well, that would be too much, and you wouldn't be able to work anywhere. But then the ALJ says that the evidence doesn't support the conclusion that she'd be unable to work 15 to 18% of the time, right? And if you would allow me to address that. So the only opinions before the ALJ, in every case, the ALJ can't make their own finding without a medical opinion. And the only opinions in this case indicate that there is disruption to the plaintiff's ability to work full-time, with the only difference being the category. And the categories, and I set that forth in the brief, it's that the Social Security's only examiners can have are none or mild, and that's where it's not significantly limited, marked, where they can't do it the entire day, or moderate, where it is limited. And in this case, we've got the examining, which for all the reasons we set forth in the brief, should have been given the greatest weight. But regardless, the examining says marked, up to marked. The non-examining, nonetheless, says moderate, one and a half out of 30 days, none mild. Isn't that accounted for by the low contact and no high production requirements? No, those are totally different. And in fact, the vocational expert said, if the person has low contact, no high productivity, but misses a day and a half per month, or separately, 15%, would the jobs remain? Vocational expert said, no, there would not be a different number of jobs. Could this case be helped? Could we know better what was going on if we knew why she was granted, why the grant was then reversed, and what happened there, especially since she is asking for the full time, including the time after it was removed. So I guess my problem is, I'm not sure what's in the record, but I would have been an awful lot happier if we knew what went on. And as the plaintiff has zero ability to access any of that, that is all the administrative law judge. The administrative law judge had the ability to access that, and in fact, did reference the prior treating physician's opinion more than three days per month absent and more than 15%, and could have put that all in the record. The administrative law judge has that duty, and had the ability, and this is where I think, when it goes back, it should go. Is he can send all the records to a medical expert, who then can look at all the records, give an opinion, we can examine, do you think that the moderate would be 5%? Which is one and a half days out of 30. Do you think that the marked, I mean, obviously the marked is way over any of this. And if you send it back, so that- That's the determination that ALJ made on this record. Say again, I'm sorry. That's the determination that ALJ made on this record. Right. And there was- That she would have panic attacks that happened once or twice a week. And so he had a finding about how often she would be unable to work, right? No. The administrative law judge, in fact. Sorry, she said that she was going to have it. Right. Once or twice a week. And he evaluates the claim against the medical evidence and makes a finding. So I understand that the ALJ can get additional evidence if he wants additional evidence. But our determination here is whether the decision is supported by substantial evidence. That is whether he had enough to make a decision, right? Right. And so the idea is we have to conclude, in order to vacate that decision, that no reasonable adjudicator could have reached that conclusion based on the evidence. So what's the piece of evidence that tells us that nobody reasonable could have reached this conclusion? And I understand that's the same argument that the court had in its extensive decisions in dissenting on Rucker and Colgan. But that's not what it says. What it says is that the administrative law judge can't just say this. And same thing with the non-examining commissioner's psychiatric examiner. He can't simply say that. There has to be reasoning behind it. He can't simply say it, and that's what they did. No, no, in Rucker and Colgan, those are treating physician cases, right? So in those cases, it's not departing from the treating physician opinion, right? I just totally disagree. And both of those opinions say, you know, this would be a different case if it was done after the treating physician was repealed. Right. Well, I'm puzzled. But I just like the answer to that. I'm just going to have an answer. Okay. So the answer is that, as Judge Calabrese has said, it would be a different case with a treating physician. But it doesn't matter, because the administrative law judge still simply can't make up a decision based on nothing. And here he's got nothing. Every single examiner, his own, Social Security's own examiners. The only difference is marked versus moderate. And the moderate is out of pages and pages and pages and pages and pages of psychiatric records, all showing here's things. See, here's things. Can't go out because afraid somebody's with her. Has panic attacks. He cites a one exam from when she goes to have the imaging studies of a thyroid. And one exam out of all of them of the psychiatric records. And then doesn't set forth in that exam everything that it chose. So there has to be a reason. And here- If I may, if I may, I am puzzled by something else. The examiner does have a duty to make a complete record. That is something we have held any number of times. But I don't see you arguing that there was a vacancy in the record in not bringing in what happened before. And that puzzles me because what happened before would seem to be essential to this record. But I don't see you making that argument. I mean, certainly, there was before the court the prior opinion. Certainly, there was before the court, from our perspective, two opinions, both saying that in trying to work, she could not work consistently. Markedly- Am I right that you have not made the argument, which I would have thought was a winning argument, that this record was incomplete? And that the ALJ had a duty to complete that argument. I don't, am I right in saying that you don't make that argument? I don't think we have made that argument. Our argument is that based on the record that there is, there is no way to find that there is zero impairment in her ability to work consistently. No, I hear you. He doesn't say there's zero impairment, right? He says that she has to not have high production demands and only limited contact with the public and simple tasks. And she has impaired memory and concentration. And that is not working- I'm not saying there's zero impairment. Forgive me, Your Honor. That is not working consistently. The vocational expert said, with every one of the things that your honor says, there still are no jobs if the person in doing that, 5% of the time, one and a half days out of 30, 5% of the time doesn't make it in, or 15% of the time is off task. But the ALJ determines that that is not the case, right? But improperly, that's- The ALJ says there are physical exams that says that she was attentive, right? She didn't have a history of psychiatric hospitalizations. She didn't have a primary care physician. She had stable mood and sleep. She said that the medication was helping, hadn't requested changes to the medicine. She had appropriate mood, organized thought process, good concentration, and attention, right? These are findings and tests. So just the question is, could a reasonable person looking at that evidence conclude that she's capable of light work? Well, there's no, and this is not an exertional case, but no. I understand, but limited in the way that the ALJ says. The answer is no, because a reasonable person would have to look at all the records. And this is a psychiatric, so I'm schizophrenic, I hear voices. When I don't hear voices, I am talking to you like I am now. Let me ask you, that conclusion that the ALJ reached was based on testimony of people who were not doctors, is your argument. Your argument is that the only testimony by doctors, which is ultimately what the ALJ has to rely on, were the two social security doctors, one of which said moderate, and the other one said more. And that the conclusion by the ALJ was based on her testimony on this and that. But that it has to be based on medical. Is that your- That's only partly true, because our testimony is that in the records that Dr. Monashi, I'm sorry, your honor, cites is an itsy bit, and it actually is in favor of us. Because that is exactly what happens with psychiatric conditions. I have a list of 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 times where she was noted with the psychiatric symptoms. She was anxious, she was fearful. He doesn't state any of those, he just picks the one or two times. And again, 5%, one and a half days out of 30. Yeah, so even if 80% of the time when you go in, you're normal. Right, I'm psychotic, I hear voices, I'm not hearing them right now. I'm arguing, hopefully, fairly well before the court. So your argument that the ALJ's decision was against the weight of the evidence, because there was more evidence that said she would be off task more frequently. And even though there was some evidence that he relied on to support this decision, the overall picture was different. I disagree, I think it's not more evidence. I think that the only evidence before the court was that there would be periods of time that she would not be able to function at work, and that he had to assess that. And that was both by the non-examining, by the examining, by her testimony. Her testimony said exactly that, and by all the time she went to get treated, and yes, 50%, maybe. Can you ask about the question that Judge Calabrese raised? Is there a requirement that there needs to be a medical opinion as opposed to other evidence of a doctor opine that somebody couldn't walk, but then there was a video of them running a marathon, obviously the ALJ would take that into account. Yeah, tougher with a psychiatric, I'm not exactly sure. Even though it's not a medical opinion, the ALJ is the one who decides, the agency decides whether somebody is disabled. And so it's all the evidence into account, right? It's just that that's just such a completely different analogy. I mean, how do you know? If, in fact, you have an opinion that somebody is going to be off task a certain amount of time, but then he has evidence about her being attentive and able to concentrate and so on, that's not something that the ALJ has to ignore. But it's, again, what you're doing is you're saying, okay, she was attentive one time, therefore she would never not be. That's the problem. The problem is- I understand. So you're just saying that the evidence isn't there. But I'm just, on this general point- It is there. Whether it has to be written by a doctor or some other piece of evidence, there's a rule about that. I agree with your honor. I mean, Shiloh is the- Excuse me. If it is a medical issue, then there has to be medical testimony. If it is an issue that is not medical, as to whether she has run or has not run, obviously that doesn't have to be. If the question is, is a person showing symptoms that show this or that, then we have held repeatedly that there has to be medical testimony, and the ALJ is not allowed to make her own, his own judgment. If it is something that is not medical, then it is something else. And the question here is which this is. Right. And the cases are very clear on this. Right. And the prime example would be the Supreme Court case, I think it's Garland, forgive me, where it was an issue, I think of a light or something like that, and they said, you could have different opinions. But you can't have that when you're dealing with something like schizophrenia or anxiety or panic attacks. How does he, how, you get a video of someone walking around that doesn't have a panic attack, see? But the panic attacks, the schizophrenia when I'm hearing things and I can't concentrate or I miss work altogether, I mean, it's just such a different, different analogy. Thank you. Thank you. Thank you, your honors. We'll hear from the governor. Good morning, your honors. May it please the court, Molly Carter for the acting commissioner. This court should affirm the commissioner's decision because substantial evidence supports the ALJ's finding that despite her mental impairments, Ms. Valdez-Ocasio could do work involving understanding, remembering, and carrying out simple instructions, routine repetitive tasks, no high production demands, and occasional contact with the public. I do want to emphasize that there is absolutely no finding in this record that Ms. Valdez-Ocasio has. Talk more slowly, please. I apologize, your honor. There's been no finding that Ms. Valdez-Ocasio has a medically determinable impairment of schizophrenia. The ALJ found that she had three mental impairments, depression, anxiety, and PTSD. There's never been a challenge or an argument made in this litigation that that was an error. So the allegations that symptoms are resulting from schizophrenia is not at issue here. Ms. Valdez-Ocasio's argument of error is based on the notion that having accepted moderate limitations in areas related to concentration and persistence, the ALJ was required to find in the RFC that she was necessarily be completely off task from any work activity or absent from any work activity for a specific amount of time. And there's no evidence in this record that compels that finding. As the term moderate is used to describe the effects of impairments on mental functioning, it means a fair ability to function independently, appropriately, and effectively. Yeah, we have said that moderate means that somebody can function. Yes, your honor. So the question is moderate. The other doctor said more, but the ALJ can rely on the doctor who said moderate. Yes, your honor, absolutely. And the ALJ did explain why he chose between those two opinions. He recognized that Dr. Slowick, who applied moderate to market limitations in those areas, did observe- It's a little odd that he chose the doctor who didn't examine as against the doctor who did. But I'm not sure that that's something we can traverse. It's true, and the ALJ acknowledged that the doctor who observed her did observe some limitations in attention and concentration. But the ALJ, as this court has repeatedly held, chose not to rely on that snapshot, where the longitudinal record showed that her treating provider consistently noted that her attention and concentration was good. And those citations are at page 35 of the commissioner's brief. There's a- Isn't it odd that there isn't the test, that we don't have the full record? I mean, I come back to saying, it would be so useful to know why she was granted this for three years when it was removed and so on. But that's not fair. Your honor, the issue here is that Ms. Valdez-Ocasio did not appeal the determination terminating her benefits. She had a right not to appeal it and to come back. And so- I would think that she would have had a right to have this in the record if she asked. However, she never asked for it, and that's the point that your honor has made. The ALJ and counsel discussed this at the hearing in pages 33 to 35 and discussed the fact that she had been terminated and hadn't chosen to challenge that finding and instead had filed a new application. And so the question here is simply whether substantial evidence supports the ALJ's decision on that new application. And there's no evidence in the record that Ms. Valdez-Ocasio's impairments manifested in her being unable to attend even to simple tasks for a specific percentage of time or a specific number of days. If she had appealed the termination, would the analysis be different? Yes, your honor. If she had appealed that, then the medical improvement analysis would apply, which is a different sequential evaluation that compares the findings when an individual was disabled to findings that have occurred later. And so the ALJ would have done a different analysis, and this court's review of that analysis would be different. So she could have had a hearing that explored whether there was an improvement and whether the prior condition that was found to exist no longer existed, but she decided to file a new application. Yes, your honor. The administrative review process is the same, so she could have requested reconsideration, and then she had been denied again. She could have requested a hearing, appeals counsel, federal court, etc., but she didn't do any of that. She waited and filed a new application, and so the regular sequential evaluation process applies. So we are back essentially to say, is there enough evidence, medical evidence, on the basis of which the ALJ could say that she could do work for the amount of time that then the vocational experts said there were jobs for her? Yes, your honor. As noted, Ms. Cron, the treating provider, rated consistently the attention and concentration as good. Ms. Valdez-Ocasio herself reported consistently that her panic resolved with her daily medications. As the ALJ noted at page 20, Ms. Valdez-Ocasio generally did not complain of difficulties with concentration or persistence. At her first visit with Ms. Cron, she reported infrequent panic attacks on her current medication. After that, she reported that her symptoms were stable. She reported that her medications were working well. She reported that she was feeling well with good medication efficacy. Again, I'm looking at medical, and so my question is, does a statement moderate, which is vague, and may be enough or may not, have to be interpreted in the light of what the other doctor, who also essentially said moderate but said more, meant? Or can it be just taken off by itself? It can be taken, and again, the ALJ explained why he chose between those opinions, recognizing that at that one time, difficulties in attention and concentration were observed. But they weren't observed at any other time by the treating providers, and she wasn't complaining about them. So that also goes to the point that it's her burden to prove the RFC, and she simply hasn't established that she, on these facts, on this record, required greater limitations than the ALJ assessed. The ALJ also, or the record also shows- But what about the thing that the opposing counsel's focused on, that the vocational expert has asked, if she's going to be off task 5% of the time or miss work, then there wouldn't be any jobs available? Certainly, but the ALJ's not required to, as your honor pointed out, explain, the ALJ did explain why further limitations weren't required. The ALJ's not required to adopt testimony about limitations that he hasn't adopted. The vocational expert simply said, if these circumstances existed, this is when she would be disabled, being absent this number of jobs or off task this amount of time. But the ALJ doesn't have to adopt that testimony because the RFC doesn't provide for that, because as the ALJ explained, the evidence does not support greater functional limitations, for all of the reasons described here. Additionally, Ms. Valdez-Ocasio was not reporting, again, wasn't reporting debilitating or consistent or uncontrolled symptoms of panic or depression. Her reports to Ms. Cron throughout their treatment was generally about specific situational stressors related to her family. She didn't, again, report any uncontrolled symptoms. She reported her medications working well. Her daily anxiety medication resolved her panic. And she reports several times during the period that she feels like she's managing stress well. As the ALJ also noted, she did not engage in therapy services that were repeatedly offered. And she actually had very sporadic mental health treatment in the later years of the relevant period. And so based on the medical evidence, which is the observations of the treating provider throughout the period, Ms. Cron's own report, or Ms. Valdez-Ocasio's own reports, and her treatment history, there certainly was substantial evidence to support the finding that she could do the RFC as assessed. The ALJ, on the facts of this case, did account for those limitations in related to concentration and attention. Dr. Slowick observed that Ms. Valdez-Ocasio's attention and concentration were moderately to markedly limited due to limited intellectual functioning. And the ALJ limited her to only simple instructions and routine repetitive tasks. Similarly, both providers noted that there were some issues with distractibility and pace. And accordingly, the ALJ limited her, again, to simple routine repetitive work with no high production demands. And where this court has repeatedly found that an RFC for such simple routine work can account for moderate mental limitations, and because substantial evidence on the record here supports that Ms. Valdez-Ocasio can do such work, and because there's no evidence in the record compelling a finding of even greater limitations, the court should affirm the ALJ's decision. If your honors have no further questions, I'll rest on my brief. Thank you, counsel. Thank you. Mr. Gorton, you're served a few minutes. And I do want to address the court's concern with the word moderate. And those are cases in which we have physical issues. So, for example, if somebody is under 50, they can get benefits only if they can lift less than 10 pounds. And the examiner in a physical setting says moderate. Well, of course, moderate in that setting or standing six hours or sitting six hours, moderate in and of itself, doesn't say anything. That's completely different from this case. And in this case, just in 2023 in Rucker, and I know you filed a dissent in that, your honor. But in Rucker, the exact same thing. In Rucker, this court found error where the ALJ did not factor in the non-examining state agency psychologist's conclusion in the worksheet that Rucker is moderately limited. And same thing, it wasn't even addressed- Do I understand your argument to be that moderate in the context of this means not able to work less than- Not exactly. What it means is that there are limitations. And the ALJ not only never even commented on the fact that there are limitations to working consistently, but gave no reason at all not to accept it. In Rucker, they also said Rucker was exactly the same in that the non-examining state agency psychologist said that they could perform entry-level unskilled work despite various moderate limitations. And in Rucker, this court specifically said that doesn't mean anything. If they say that there are disruptions, even if the non-examiner concluded, you have to factor in those limitations in terms of whether they can do it consistently. And that's the issue. And it was never even discussed by the judge. And the other thing is, with respect, again, I want to go back again to the findings, quote, unquote, findings of the ALJ. That there were times that when she went to the doctors, she appeared like she had concentration. Well, here are all the times that she didn't. And it's only 5%, one and a half days, or 15% off task. It's TR-336, anxious effect, mood effect, speech, hallucinations, 309, moody argumentative, 439, anxious with constricted effect, same thing, 341, 342, 337, not wanting to be here, 353, 325, anxious, auditory hallucinations, same thing, 392, 393. On the health questionnaire, 323, 324. And again, 323, 326. And there's more. I know I have no time. And- So why is it that she filed a new application as opposed to challenge her termination? Yes. No attorney. She's Spanish speaking. She can't speak one word of English. That's why. Which suggests why it would have been good to have a whole record. And I'm asking, can we, on our own, ask for saying that there was a mistake in not fulfilling the record, though you haven't made that argument? I don't think it's needed. There are only- I know you don't think it's needed, but it isn't you who is deciding. I'd leave that up to the court, but I do, again- I want to know whether we can ask for something that we think is important, even if you haven't- I hope so. As we explored before, if she had challenged the termination, there'd be a different analysis as to whether the disability that was found before has ceased. But she filed a new application, so now we have a regular substantial evidence analysis. Do you support that? Yeah, we have a- We are looking at the new application. We are not doing the medical improvement analysis that- Correct. We have a Spanish, non-speaking individual with psychiatric issues, unrepresented, who didn't know enough. So, yes, I agree with the court. Thank you, counsel. Thank you both.